IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.   13-cv-00724-LTB

ENSIGN UNITED STATES DRILLING, INC., and
ENSIGN UNITED STATES DRILLING (CALIFORNIA) INC.,

        Plaintiffs,

v.

B & H RIG AND TONG SALES, and
WEATHERFORD U.S. LIMITED PARTNERSHIP,

        Defendants.

_____

ORDER
_____

This matter is before me on a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant B&H Rig and Tong Sales (B&H) seeking to dismiss the complaint filed against it by Plaintiffs Ensign United States Drilling, Inc. and Ensign United States Drilling (California) Inc. (collectively, "Ensign") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). [**Doc #15**] Oral arguments would not materially assist me in my determination. After consideration of the parties' arguments, and for the reason stated, I GRANT B&H's motion and, as a result, I DISMISS it as a defendant in this case.

## I. BACKGROUND

This litigation involves an industrial accident that occurred on May 20, 2011, in which an Ensign employee was injured in Ventura, California, after equipment known as an "RH-35 rod hook" – that was manufactured by Defendant Weatherford U.S. Limited Partnership

("Weatherford") and then sold to Ensign by Defendant B&H – allegedly malfunctioned due to a defect, causing the accident.

Ensign initially filed this lawsuit against B&H and Weatherford in the District Court for the City and County of Denver, State of Colorado (Case No. 2013CV30638) in February of 2013, asserting claims of: negligence; strict liability (design defect, manufacturing defect, and failure to warn); and breach of express and implied warranties. [Doc #2-5] The case was subsequently removed to this Court, by Defendant Weatherford and joined by Defendant B&H, on diversity jurisdiction grounds pursuant to 28 U.S.C. §1332(a). [Doc #1 & #2]

Thereafter, B&H filed this motion in which it argues that this Court cannot exercise personal jurisdiction over it in that the facts, as alleged, fail to sufficiently assert a connection between B&H – a company based in Wyoming – and Colorado so substantial that it approximates a physical presence in order to establish general jurisdiction. Ensign responded by filing a motion indicating that it believed B&H has contacts with Colorado sufficient to support the exercise of general jurisdiction in the form of "a significant and continuous business presence in Colorado." As such, Ensign's motion sought leave to conduct limited discovery to the issue of personal jurisdiction – specifically, as to the extent of B&H's business contacts with Colorado – in order to assess if they are sufficiently continuous and systematic to support general jurisdiction. [Doc #21] In ruling on this motion, I concluded that Ensign was entitled to very limited discovery to assess the extent of B&H's activities in Colorado in order to respond to this motion. Specifically, I agreed that Ensign should be allowed to depose the two principals of B&H – Bill (Francis) and Virginia Hodgden – who provided affidavits in support of B&H's motion to dismiss. Accordingly, I ruled that Ensign could take a maximum of two depositions,

of no longer than 2.5 hours each, in order to inquire into the extent of B&H's business contacts in Colorado. [Doc # 35]  Ensign took the relevant depositions, and then responded to the motion to dismiss. [Doc # 40]  Defendants jointly filed a reply in support of B&H's motion. [Doc #41]

## II.  LAW

In a diversity action such as this, a federal court has personal jurisdiction over a defendant if jurisdiction is consistent with the state's long arm statute and if jurisdiction does not violate the due process clause of the Fourteenth Amendment.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).  The Colorado long arm statute, Colo. Rev. Stat. §13-1-124, has been construed to extend jurisdiction to the full extent of the Constitution, so the analysis here reduces to a single inquiry of whether jurisdiction offends due process.  *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo.1992).  The plaintiff bears the burden of establishing personal jurisdiction over a defendant.  *F.D.I.C. v. First Interstate Bank of Denver, N.A.,* 937 F.Supp.1461, 1466 (D.Colo. 1996)(*citing Behagen v. Amateur Basketball Ass'n of the U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984)).

In order to exercise personal jurisdiction that comports with due process, defendants must have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  As such, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence, the state's exercise of sovereignty over it can be described as fair and just.  *Id.*

Minimum contacts may be established under either the doctrines of general jurisdiction or specific jurisdiction. Specific jurisdiction – which the parties agree is not relevant here – is present where the defendant has purposefully directed his or her activities at the residents of the forum and the litigation results from injuries that arise out of or relate to those activities. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999). When, as here, general jurisdiction is asserted over a non-resident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Benton v. Cameco, supra*, 375 F.3d at 1080 (*quoting OMI Holdings v. Royal Ins., supra,* 149 F.3d at 1091). As such, general jurisdiction requires that a defendant have contacts with the forum "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796, (2011); *see also Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006). Establishing general jurisdiction is a "high burden." *Grynberg v. Ivanhoe Energy, Inc.,* 490 Fed.Appx. 86, 94 (10th Cir. 2012)(not published)(citations omitted).

The Tenth Circuit has relied on various factors to assist in the determination of whether the business contacts of a non-resident corporate defendant are sufficient to exercise general personal jurisdiction, such as: "(1) whether the corporation solicits business in the state through

a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." *Grynberg v. Ivanhoe Energy, supra,* 490 Fed.Appx. at 95 (*citing Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996) and *Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001)). In addition, courts consider the frequency of a defendant's travel to the forum state, the amount of work a defendant performs in the forum state, and whether a defendant owns property in the forum state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996); *see also Soma Medical v. Standard Chartered Bank*, *supra*, 196 F.3d at 1295 (listing factors as observed by the Utah Court of Appeals).

### III. ANALYSIS

In response to B&H's motion to dismiss for lack of personal jurisdiction, Ensign argues that B&H has engaged in continuous and systematic business in Colorado, supporting this Court's exercise of general jurisdiction. Specifically, it asserts that such business includes: regular and purposeful solicitation of business in Colorado; continuous and regular business with Colorado companies; regular deliveries, pickups and sales efforts to Colorado; and regular ongoing purchases from Colorado. Defendants argue, in contrast, that B&H's contacts with Colorado do not approach the continuous and systematic level required for the exercise of general jurisdiction.

The record contains the following jurisdictional facts related to the exercise of general jurisdiction by this Court over B&H. B&H was incorporated as a Wyoming company in 1998 by

Bill Hodgden. Its business involves: (1) selling equipment for oil well servicing and (2) repairing (including the sale of parts) of oil well servicing equipment. B&H's focus is the Rocky Mountain Region, including Wyoming, North Dakota, Colorado, and Montana. B&H currently has 14 full-time employees (including the principals – Bill and, his wife, Virginia Hodgden) and 2 part-time employees. All of B&H's employees work at B&H's only facility located in Casper, Wyoming, where it issues invoices (that include Wyoming sales tax) for parts sold and repair work performed. B&H derives the majority of its revenue from performing repair services for customers, including those in Colorado, and it performs nearly all such repairs at its facility in Wyoming. Mr. Hodgden testified that he estimated that at least 85-90% of the company's business is conducted in Wyoming.

In the course of doing business, B&H sends an employee to Colorado to deliver equipment and parts purchased by Colorado companies, and to retrieve equipment to be repaired at the Wyoming facility. These trips occur approximately every two weeks or three weeks, depending on need. Prior to these trips, the B&H driver (specifically, Bill Hodgden until 2011 and Doug Franklin thereafter) usually contacts its other Colorado customers – between 8 and 15 companies – to notify them that it will be in Colorado on a particular day if they need anything delivered or picked up. Occasionally the driver will stop by its Colorado businesses during these deliveries. One other B&H employee has visited existing customers, solicited new customers and performed services in Colorado, but only on approximately 20 occasions over a period of 11 years. Finally, B&H employees travel to Colorado very rarely to conduct oil rig inspections. The remainder of B&H employees do not leave the Wyoming facility because – as Bill Hodgden testified – B&H "really do[es] not do fieldwork, it's all in-shop work."

B&H indicates that the percentage of its business with Colorado companies (based upon gross sales figures) involving primarily parts and equipment sales, as well as a few oil rig inspections, is as follows: 13% in 2009; 18% in 2010; 8% in 2011; and 14% in 2012. At his deposition, Bill Hodgden testified that these percentages and gross sales figures do not reflect B&H's repair services performed in its Wyoming facility for Colorado companies. While the Hodgdens could not identify the gross revenues of B&H's repair services to Colorado companies, Bill Hodgden estimated that approximately 10-15% of B&H's total revenue (from all sources) is generated from Colorado customers. Ensign argues that – based on the numbers provided by B&H – the percentage of sales involving Colorado companies (on the gross value of parts and equipment sales, not repair services) "totaled $585,000 in 2009, $1.026 million in 2010, $912,000 in 2011, and $1.848 million in 2012." It further argues that because repair service revenue exceeded part sales revenue "it can be deduced that an even larger amount of revenue was generated in each of these years for repair services involving Colorado entities."

The total number of Colorado customers that have purchased parts or equipment from B&H are: 15 in 2009, 21 in 2010, 15 separate companies in 2011, and 22 separate companies in 2012. Ensign again notes that these numbers do not appear to include the number of Colorado customers that utilize B&H's repair services. In addition, B&H purchases parts from seven vendors located in Colorado – and between two and four of these companies' parts are stocked on B&H's shelves – but does not maintain ongoing contractual relationships with Colorado vendors. Finally, B&H advertises in two national publications that, in turn, reach Colorado customers, and it operates a website that can be utilized by Colorado customers and which contains contact emails for five B&H employees.

I conclude that B&H's activities associated with the state of Colorado do not rise to the level of continuous and systematic business contacts necessary to invoke the exercise of general jurisdiction.  First, it is undisputed that B&H does not own or lease real property in Colorado, nor does it maintain an office, employees or a bank account there.  It does not pay taxes or hold any licenses – including a license to do business – in Colorado.  Rather, the record reveals that B&H engages in its business in Casper, Wyoming, where the company repairs oil rig servicing equipment for its customers located throughout the Rocky Mountain region.  B&H's sole location is in Wyoming, where it does almost all the repair work "in-shop" by its local employees.  Although B&H also sells new equipment for oil rig servicing, that portion of its business is clearly secondary to its repair work.  To the extent that they inspect oil rigs – by traveling to the rig and performing the inspection on location – or make repairs in the field, it is clear that such on-site work is extremely rare and only a minor part of B&H's business activities.

The testimony reveals that B&H has between 8 and 15 customers in Colorado, and Bill Hodgden estimates that approximately 10-15% of B&H's total revenue is generated from those customers.  Although the amount of repair revenue from Colorado companies was not quantified, this number is consistent with the percentages of Colorado business for parts sales (and a minimal amount of oil rig inspections) from 2009-12, which ranged from 8% to 18%.  B&H does minimal marketing in general, and while there is some evidence that B&H engages in limited activities soliciting business from new Colorado customers, the testimony is that such solicitation is marginal and not consistent or in any way calculated.  B&H does not specifically advertise in Colorado, and its contact with potential new customers seems to be generally limited

to when it is making deliveries to Colorado – as necessary, every two or three weeks – for pick up and delivery of parts and repaired equipment.  Bill Hodgden testified that B&H's customers (including those in Colorado) typically contact B&H when they need something.

While it is clear that a portion of B&H's business is done with Colorado companies, the volume of business it conducts with entities in Colorado is relatively minimal and, more importantly, the repair service are generally performed in Wyoming.  B&H holds itself out as doing business in the Rocky Mountain region (including Colorado) but it clearly is located solely in Wyoming, provides invoices from there, and does almost all its repair work there.  Services and or direct sales to new or existing Colorado customers are minimal, not planned or specifically scheduled, and are essentially trivial.  When assessing general jurisdiction, the commercial contacts "must be of a sort that approximate physical presence in the state – and engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."  *Shrader v. Biddinger,* 633 F.3d 1235, 1243 (10th Cir. 2011)(citations omitted).  As such, I conclude, that Ensign has failed to met its high burden of establishing continuous and systematic contacts by B&H with Colorado sufficient to support personal general jurisdiction.

Because I have concluded that Ensign has not demonstrated minimum contacts by B&H with the state of Colorado, I do not reach the next step of the due process analysis – i.e., whether the exercise of personal jurisdiction over B&H could offend "traditional notions of fair play and substantial justice."  *See generally Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

ACCORDINGLY, I GRANT the Motion to Dismiss for Lack of Personal Jurisdiction [**Doc #15**] filed by Defendant B&H Rig and Tong Sales and, as such I DISMISS it as a defendant in this case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Dated: October 30, 2013 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE